*Wayne v. Town of Stockbridge*, No. 483-8-10 Wrcv (Teachout, J., May 16, 2014)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

**SUPERIOR COURT**                                       **CIVIL DIVISION**
**Windsor Unit**                                            **Docket # 483-8-10 Wrcv**

**JOHN S. WAYNE,**
**NANCY WAYNE JAFFE REVOCABLE TRUST, and**
**RICHARD T. WAYNE,**
       **Plaintiffs**

       **v.**

**TOWN OF STOCKBRIDGE,**
       **Defendant**

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

This matter came before the Court for final hearing on the merits on March 6 and 7, 2014. Post-trial proposed findings of fact and memoranda of law were timely filed. Plaintiffs are represented by Attorney Paul S. Gillies. The Defendant is represented by Attorney John H. Klesch.

In this quiet title action, Plaintiffs seek a declaration concerning a wooded lane that crosses their land, which is a portion of a 1.1 mile stretch that the Town of Stockbridge claims is a town road. For more than 40 years, the Town has considered it to be a town road, whereas the Plaintiffs have considered it to be their private property. Each party acted as if it was their own without knowing that the other believed it was theirs. The difference came to light over an incident in 2007 described below.

Plaintiffs seek a declaration that it is not a town road, and that they are sole owners of the land where the road lies. The Defendant Town claims that the road is a portion of a town road called Town Highway 9, which links two other town roads in the vicinity, Lyon Hill Road and Music Mountain Road. Lyon Hill Road bisects Plaintiffs' land, and the intersection of the disputed road and Lyon Hill Road is on Plaintiffs' land.

The Town claims that the entire length of what it calls Town Highway 9 (TH 9), which is 1.1 miles long from Lyon Hill Road to Music Mountain Road, is a town road. However, beyond Plaintiffs' land along the disputed roadway (between the Plaintiffs' property and Music Mountain Road), there are two other parcels of land, and those owners were not made parties to the suit and thus have had no opportunity to address the issue. The scope of this case is only that portion of the disputed road that is on Plaintiffs' land. In this Decision, the entire length of the roadway from Lyon Hill Road to Music Mountain Road will be called "claimed TH 9," whereas the portion that lies within Plaintiffs' boundaries will be called simply "the road."

Both parties acknowledge that there are no documents in the Town records showing a formal laying out of a town road along the track of claimed TH 9 pursuant to the statutory method for the establishment of town roads. There is no survey or record of an official act on the part of the Selectboard. The alternative method for creation of a town road is by dedication and acceptance. Both parties acknowledge that there is no evidence of an express act of dedication on the part of Plaintiffs or their predecessors in title, or an express act of acceptance on the part of the Town. The parties agree that the issue in this case is whether claimed TH 9 was created as a town road as a result of dedication and acceptance *by implication*. This calls upon the Court to consider whether reasonable inferences based on the evidence support both a finding of implied dedication and a finding of implied acceptance. Both parties agree that it is the Town that bears the burden of proof to prove that "the road" is a town road.

## Motion for Judgment as a Matter of Law

At the close of the Town's evidence and again at the close of all evidence, Plaintiffs moved for judgment as a matter of law pursuant to V.R.C.P. 50 on the grounds that the Town had not presented sufficient evidence of dedication by implication. The Court has reviewed the evidence and denies the motion. The Town presented expert testimony of land surveyor Richard Lunna that in his expert opinion, based on a provision in a deed from 1810, lack of other access roads in the vicinity to land parcels, evidence of use over the years, the existence of stone walls along both sides of the first several hundred feet, missing documentation in the land records regarding other town roads, and other factors, the cumulative evidence supports the conclusion that the road in question was dedicated as a town road as of 1810 and accepted by the Town. While the undersigned as finders of fact are not obligated to accept the opinion, it is sufficient to meet the Town's burden to present evidence in support of its claim that the road crossing Plaintiffs' land is a town road. The Motion for Judgment as a Matter of Law is denied.

## Findings of Fact

Based on the facts and for the reasons set forth below, the undersigned find that the Town has not met its burden to prove dedication for public use, even by implication, of "the road" as it crosses Plaintiffs' land.

The Plaintiffs own several hundred acres of land in the northerly part of the Town of Stockbridge, which is remote from the center of town and sparsely populated. Their grandfather[1] bought a 200 acre parcel in 1945 and transferred ownership to his children, the Plaintiffs' father and aunt, in 1946 but used the property himself until his death in the 1970s. The aunt transferred her share to their father, who transferred the property to his children, the Plaintiffs. Additional acreage was later added. As noted above, Lyon Hill Road, a town road, runs through the primary parcel and provides access to the dwelling on the property. Lyon Hill Road is a Class III road that is not regularly maintained year-round, but is plowed by the Town during the winter as

---

[1] Nancy Wayne Jaffee appears to be the principal party of interest in the Nancy Wayne Jaffe Revocable Trust. For simplicity, "Plaintiffs" in this Decision includes both Nancy Wayne Jaffee and the Nancy Wayne Jaffe Revocable Trust as well as the other two individuals.

necessary for use by the Wayne family for access to the house.  Since 1945, members of the Wayne family have used the property on a continuous part-time basis.  A Stockbridge resident, Robert Dorman, has been employed as caretaker of the property continuously since 1955.

"The road" as it crosses Plaintiffs' land is now a wooded lane approximately 12-15 feet wide.  It consists of two tracks with a grassy strip down the middle and is surrounded by woods on both sides.  At the southern end, beginning at the intersection with Lyon Hill Road, there are stone walls on both sides for approximately 300-400 feet.  The stone wall on the easterly side continues all the way through Plaintiffs' land to the property line to the abutter to the north.  A part of the road on Plaintiffs' land is somewhat steep and rocky and water washes down it.  Surveyor Lunna called that portion a "dugout."  The land is wet in and near "the road" and the Plaintiffs' spring is located very close to it and has been throughout the Wayne family ownership.

The Town of Stockbridge was chartered in 1761, and its proprietors began to organize the town in the mid-1780s. Joel Doolittle acquired all of Rights 4 and 5 (within which claimed TH 9 lies) and began to convey property in 1793.  The first road in this portion of the town was Music Mountain Road, which was laid out in 1790 and lies some distance to the north of the Wayne land.  Parcels in the vicinity of Music Mountain Road were first conveyed in 1793 and 1795 but without mention of a road.  In 1808, James Whitcomb conveyed a parcel of 50 acres in the vicinity of "the road" to Paul Whitcomb, but with no mention of any road or road access.

In 1810, Jotham Chamberlain conveyed a parcel of 9 acres to Paul Whitcomb.  This 9-acre piece is a portion of lands now owned by Plaintiffs and over which a portion of "the road" presently runs.  The description for the parcel concluded with: "Containing Nine acres except the Road which runs Through said piece of Land."  There is no other term of this deed that mentions any road, easement, or other form of access.  The Town's surveyor, Richard Lunna, relies on this deed as evidence of the creation of dedication of claimed TH 9.  It is noted that it can only reference a portion of claimed TH 9 (only about 500 feet of the 1.1 miles), and not all of  "the road" that physically exists on Plaintiffs' land.  The premises conveyed in the 1808 deed would have encompassed another small segment of "the road" on Plaintiffs' land, but in that deed, only two years earlier, there is no mention of a road.  It is also noteworthy that the larger road to which such a road, if it existed, might have connected, Lyon Hill Road, was not yet laid out.

Town records show that in 1828, Music Mountain Road was altered, and Lyon Hill Road was laid out.  Claimed TH 9 runs physically between these two roads, but there is no record of any existence of claimed TH 9 at that time.

Town records show that in 1832 a different town road, located in an area to the east of Plaintiffs' tract, was discontinued as a town road, despite no town record documentation that it was ever laid out as a town road.  There are other town roads in Stockbridge for which there are no surveys. Both parties acknowledge that Town records with respect to roads are poor and incomplete.  However, the Town land records do include road surveys, including roads laid out prior to 1810, and no land records books are missing from town records.

Town records show that in 1834, Music Mountain Road was extended northward to the Bethel town line. There is no mention of any road in the location of claimed TH 9.

Doten's map of Stockbridge was published in 1856 and does not show a road in the location of claimed TH 9.

In 1869, Beer's Atlas was published and shows a segment of a roadway from Lyon Hill Road north to the Allen homestead in the location of "the road" on the Plaintiffs' land. The cellarhole of the Allen homestead presently exists on claimed TH 9, north of Plaintiffs' land. "The road" on Plaintiffs' land is likely the access road to it that is depicted in Beer's Atlas. However, the Atlas shows it as dashed parallel lines as opposed to other roads which are depicted with solid parallel lines. It is unknown whether roads depicted on the Atlas included only town roads or also included other roads physically on the ground without regard to their status, and what the significance is of dashed lines as opposed to solid lines. Surveyor Richard Lunna checked the records for 7 other roads in the northeast part of Stockbridge that are shown in Beers Atlas with parallel dashed lines. Of these 7, three were laid out by survey as town roads. There are no surveys laying out the others for town roads.

Aside from the brief reference to a road in the 1810 deed referenced above, no deeds in Plaintiffs' chain of title reference any access road, whether a town road or private right of way.

Child's Gazeteer, published in 1883-84, includes a map that shows a segment of a road in the same location as depicted on Beer's Atlas.

In 1931, a map of Stockbridge depicts a road linking Lyon Hill Road and Music Mountain Road in the location of claimed TH 9 and labels it as 1.1 miles. The 1931 map lists the total mileage of town roads as 49.65 miles. The Town relies on this map as showing implied acceptance of claimed TH 9 by the Town. This map was revised in 1936 and 1941, apparently without change to the depiction of claimed TH 9.

Another 1941 map shows the same 1.1 stretch of road depicted with a double dashed line with a partially shown legend that suggests that double dashed lines means 'primitive road.'

In 1945, Plaintiffs' grandfather bought the parcel that includes "the road." The following year, in 1946, he had a survey of what he purchased prepared by surveyor L. F. Newell, and transferred ownership to his son and daughter, Plaintiffs' father and aunt. L. F. Newell was a well-known surveyor from that period of time. Newell's survey depicts "the road" crossing the land with dashed double lines and labels it "farm road." It depicts Lyon Hill Road with solid parallel lines.

The year after that, 1947, the Town prepared another map of town roads. Claimed TH 9 is depicted on this 1947 map with a double dashed line. It is labeled "pent road." The legend labels double dashed line roads as "primitive road[s]." Unlike the 1931 map of town roads, no mileage is shown for claimed TH 9. There are also a few other primitive roads on this map for which no mileage is shown. However, mileage distances are shown for nearly all of the other roads and road segments on this map, including very short ones, such as those 0.15 miles long.

4

The total mileage for town highways is 40.35, which is over 9 miles less than the total on the 1931 map, whereas the total mileage for state highways is unchanged from the 1931 map. Surveyor Richard Lunna defined a "pent road" as a road that can be either one rod wide (16') or two rods wide (33') and the owner of lands on both sides has the right to gate it to keep stock in.

From the time Plaintiffs' grandfather acquired the property, he occupied it every summer, and kept meticulous records about his use of the property, including his interactions with the Town for things such as requests for maintenance of Lyon Hill Road. His records survive and have been reviewed by Plaintiff Nancy Wayne Jaffe. While they include many communications with the Town, including at least one request to the Town for work to be done on Lyon Hill Road which was denied, there is nothing that relates to claimed TH 9. He took soil from the area of "the road" many times to use to improve his lawn without asking permission of the Town.

In 1953, people with ATVs began riding on claimed TH 9, including "the road" portion, as it was part of a desirable loop ride. Many local people who used the road for this purpose assumed it was a town road. The Wayne family members always gave permission whenever asked. They believed they owned the road but were generous about allowing others free access and use.

In 1959, International Paper owned a parcel to the north of the Plaintiffs land and logged it for pulp. It apparently used the northern part of claimed TH 9 (not related to "the road" Plaintiffs claim), although it is not clear whether or not IP considered the portion of claimed TH 9 that it used to be a town road.

In 1964, snowmobilers began crossing between Lyon Hill Road and Music Mountain Road along a route that was used to get to the statewide VAST trail network (Vermont Association of Snow Travelers). While it crossed the Plaintiffs' land, the lower, southern portion of it was not on the track of "the road" but on an alternative way that has been described as an old logging road.

In the 1970's, there were only approximately 230-240 residents of the Town of Stockbridge, and the property at issue was in a remote location. Town records were poor. The evidence indicates that some residents of the area, particularly those who rode snowmobiles and ATVs, assumed that the claimed TH 9 was a town road, without having a specific basis for the assumption.

In 1973, Act 63 was enacted, which required towns to classify their roads. In 1974, the Town created a list of town roads and classified them. Claimed TH 9 is included as a Class IV road, and labeled Town Highway No. 9. Under a column entitled "Present mileage" the mileage for claimed TH 9 is "0.00" and under the column entitled "Class 4" the mileage is "1.10." Under the "Remarks" column is the word "Pent." There is one other pent road that was listed with no present mileage that became a Class 4 road (#16). There are three other roads (23, 24, & 26) with no present mileage that became Class 4 roads. For all other roads, there is a "present mileage" figure given that totals the mileage broken down into the Class 3 and Class 4 columns.

5

There is no evidence that any notice of the classification of claimed TH 9 as a town road was given to the owner at the time. In 1974, Plaintiffs' aunt died, and their father became sole owner of the property. He and his wife spent 6 months of every year at the property until his death in 2001.

From 1974 forward, the Town has consistently treated claimed TH 9 as a town road. Some time between 1974 and 1979, Town road personnel performed some maintenance (cleared brush, did some grading, and installed waterbars) on the northern section, to the north of Plaintiffs' land and not on it. Plaintiffs and their father continued using the property as before, and continued to give permission to use "the road" to those who asked for it. Plaintiffs' property is not only south of where the Town performed maintenance but downhill from it, in a location from which Town work on the northerly portion of claimed TH 9 would not have been apparent. There is no evidence that the Town ever performed any kind of maintenance on the portion of "the road" that crosses Plaintiffs' land until the 2007 incident described below that precipitated this lawsuit.

In 1984, Plaintiffs' father deeded the property to them.

In 1988, the Wayne family land holdings were enlarged to a total of 360-370 acres, but with no effect on the original piece across which "the road" runs. The road continued to be used regularly as a snowmobile and ATV trail with the Plaintiffs' consent.

In 1998, the Central Vermont Quadrunners formed as an organization of ATV riders that is a chapter of VASA, similar to VAST. Beginning that year, every year the ATV club obtained permission from the Town Selectboard for its members to use claimed TH 9 for ATV riding between May and October. Both the ATV club and the Town Selectboard sought and granted permission based on the assumption that all of TH 9 was a town road, although the route used was the same as that used by snowmobilers, which was, at the southern end, the old logging road and not the actual location of the most southerly portion of "the road."

In 1998, Peter Vollers started using claimed TH 9 road for overland Landrover riding, in the belief that it was a town road as it was listed as such on state highway maps.

The Wayne family continued to have no objection to anyone using either the old logging route across their land, as the snowmobilers and ATV riders did, or "the road" at its original location (between the stone walls). They occasionally helped people who got stuck, and granted permission when asked. Their caretaker also did so on their behalf when he was the only person present.

Sometime around the year 2000, the owner of the former International Paper parcel, at the northern end of claimed TH 9 where it intersects with Music Mountain Road, put up a cable across claimed TH 9, blocking the entrance to claimed TH 9 at the north end. The Selectboard, on the basis that claimed TH 9 was a town road, told the owner to take it down, and he did.

In 2001, the Central Vermont Quadrunners began using claimed TH 9 for organized club rides, and not just for individual use by its members. A member of Central Vermont

Quadrunners made the first maps of trails for members. He looked up Stockbridge town roads, and included claimed TH 9 because he found it on the 1931 map. Over the years, the Central Vermont Quadrunners has had a membership varying between 30 and 209.

At some point between 2002 and 2009, a car was abandoned at the northern end of claimed TH 9, to the north of Plaintiffs' parcel. The Town road commissioner, acting on behalf of the Town, assumed responsibility for the problem and notified the Vermont State Police. There is no evidence that Plaintiffs had notice of the Town's assumption of responsibility for what occurred on that portion of the road, which was north and uphill from their parcel.

In 2007, the Town established an ancient roads committee to clarify the status of possible ancient roads in town in compliance with legislation that required towns to identify any claims they had to otherwise unidentified roads. The committee did not consider claimed TH 9 at all because it considered it to be a town road already.

Peter Vollers continued to use claimed TH 9 for overland rides. He created an organization entitled Vermont Expedition Society and organized group rides on a route that included claimed TH 9, still based on the understanding from state highway maps that it was a town road.

A member of the ATV club became concerned that the club was obtaining permission from the Town to use a town road, but was not actually using the correct location; it was using the old logging road at the southern end on Plaintiffs' land, just as the snowmobilers were, rather than the portion that ended between the stone walls. In 2007 the ATV club asked permission of the Selectboard to improve what it considered to be the proper location of TH 9. Permission was apparently granted at a Selectboard meeting, although the request was not on any written agenda and is not reflected in any minutes. The Town road commissioner and foreman, Ken Carter, who was also a member of the ATV club, was authorized to cut trees in the roadway, and install a culvert provided by the Town, which he did. Grading was also done with a piece of heavy equipment.

Doug Lunna contacted Plaintiffs' caretaker and told him that the ATV club was going to clear brush. The work was done at a location along the road on Plaintiff's land very close to the spring which provides water to the Plaintiffs' residence. When Mr. Dorman investigated, he discovered downed trees and that the road was torn up. He showed Plaintiff John Wayne, who contacted Doug Lunna, who told him that the work was authorized by the Town Selectboard. This prompted the discovery of the fundamental difference in claims between the parties, and both parties began to research the status of the road.

The Town hired a surveyor, Richard Lunna, to research the situation. He happens to live very close to claimed TH 9 and is familiar with the history of land titles in the area. He grew up in the area himself and has been a member of the Central Vermont Quadrunners for many years. He also has many relatives who also live nearby and who have used claimed TH 9 extensively for snowmobiling and ATV riding. He testified that based on his interpretation of the 1810 deed, lack of other access roads in the vicinity to land parcels, evidence of use, the existence of stone walls along both sides of the first several hundred feet, and missing documentation in the land

records regarding other town roads, the evidence supports the conclusion that the road in question was dedicated and accepted as a town road as of 1810.

Nancy Wayne Jaffee did extensive research of her own in Town records and family records, and found no evidence of the road being a Town road other than evidence presented at trial.

The outcome of the research of both parties did not produce clarity and led to this quiet title action to resolve the issue.

Until the problem arose, neither the Town nor the Waynes ever put up any signs anywhere along any portion of claimed TH 9, nor on the old logging road used by snowmobilers and ATV riders prior to the switch of route, nor on the road as it crossed Plaintiffs' land. The Town has never plowed any portion of claimed TH 9. Neither party performed any maintenance that would alert the other to its claim to the road as it crosses Plaintiffs' land.

Pending the outcome of this suit, the Town has declined to give permission to the ATV club. Others continue to use the road, believing that it is a town road. Plaintiffs have discovered that the technological innovation of GPS systems has led to more people attempting to use it since it is on the state road system as a town road, but it is still an undeveloped road with wet and difficult terrain, and drivers sometimes get stuck. It is not in a condition to accommodate most road vehicles. Plaintiffs do not wish to close it off from its traditional use by others in connection with enjoyment of the area, but wish to be able to exercise control if there are problems in the future. There are now approximately 750 residents of Stockbridge.

It is a question of fact whether the Town, which carries the burden of proof, has proved both dedication and acceptance of the road as it crosses Plaintiffs' land by a preponderance of the evidence. For the reasons stated below, the Court finds that the Town has not met the burden of proof.

The Court does not find that the facts are sufficiently strong, individually or collectively, to support an inference of dedication, despite the fact that the Town's surveyor reached this conclusion. The 1810 deed covers only a small portion of the segment of "the road" that crosses Plaintiffs' land (only 500 feet), and no other deeds suggest a road either to the north or south that would complete the 1.1 mile length of TH 9 the Town claims, or even the full length of the segment that crosses Plaintiffs' land. The language of the 1810 deed refers to a road passing through, but the use of the word "road" by itself does not carry the implication that the road had been dedicated as a town road.

The facts showing usage over the years do not prove that the road was dedicated for public use, as all uses are as consistent with private ownership in which the owners tolerate use by others (as the Wayne family has done) as it is with Town ownership. Nancy Wayne Jaffee found a reference to the Allen children using the road to walk to school, but that does not mean that the road was a town road; schoolchildren are presumed to use the shortest route that they are not prevented from using. The extensive use by snowmobilers and ATV riders does not convert

8

a private road into a town road where there are no other circumstances from which dedication can be inferred.

The existence of the stone walls at the southern end do not support an inference that the road was dedicated to public use, as stone walls have been created in Vermont for a variety of reasons. Many stone walls are wholly on private land.

The fact that portions of claimed TH 9 are depicted on 19th century maps of the area is not persuasive as it is not clear on any of those maps that roads depicted are exclusively town roads. The 1931 map is also not conclusive for the same reason. There does not seem to have been a basis for the inclusion of claimed TH 9 on the 1931 map, and the 1947 map suggests a possible retreat from the claim by the Town that the road was a town road. More telling is the fact that the 1946 survey by an experienced local surveyor showed the road on Plaintiffs' original land parcel but did not show it as a town road, and instead called it a "farm road." This is consistent with the Town road map of the following year, 1947, in which no mileage is shown for claimed TH 9, which is labeled "pent."

There is no evidence that any member of Plaintiffs' family or any predecessor in title ever acquiesced in any action by the Town suggesting public use.

It seems highly likely that the surveyor Mr. Newell would have had strong incentive to determine whether the road was a town road or not, and concluded that it was not. This was a reasonable conclusion, assuming his examination of the land records yielded the same results obtained by Richard Lunna. It appears that town officials acted consistently with this conclusion in their map of 1947, in which they showed the road as a primitive road but did not assign mileage to it. The fact that the total road mileage for 1947 is less than that on the 1931 map also suggests that the 1931 map may have overstated town road identification and mileage.

Exhaustive research has been conducted from which there is no evidence that some or all of claimed TH 9 was dedicated for public use. Usage alone, even in reliance on the 1931 map, is not a sufficient basis from which to infer dedication. Even taking all of the other circumstances into account, reasonable inferences from the Town's evidence are not sufficient to support a finding that meets the burden of proof to show dedication, even by implication, by a preponderance of the evidence.

## Conclusions of Law

The Town has the burden to prove that a road is a town road. *McAdams v. Town of Barnard,* 2007 VT 61, ¶ 13. The Town has the obligation to prove both dedication of the road for town use and acceptance on the part of the town. *Bacon et al. v. Boston & Maine R.R. et al,* 83 Vt. 421, 432-33 (1910). Both dedication and acceptance may be proved by implication if the circumstances support it. *Druke v Town of Newfane,* 137 Vt. 571 (1979).

The findings of fact above show that the Town is unable to establish the element of dedication, even by implication. The evidence supports acceptance by the Town as of 1974, when claimed TH 9 was listed as a Class IV road, but the absence of sufficient proof of

dedication, even by implication, on the part of any predecessor in Plaintiffs' chain of title means that the Town has not sustained its burden of proof. Plaintiffs are entitled to a declaration that they are the owners, free and clear of any claim of the Town, of that portion of claimed TH 9 that crosses their land.

## ORDER

Plaintiffs' counsel shall prepare a declaratory judgment based on the foregoing Findings of Fact and Conclusions of Law.

Dated at Woodstock, Vermont, this ___ day of May, 2014.

_____
Mary Miles Teachout
Presiding Judge


_____
David Singer (as to facts)
Assistant Judge


_____
Jack Anderson (as to facts)
Assistant Judge